IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ALLEN GORDON,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 2:18-CV-1781-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 7 and 8), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on cross motions for summary judgment. (ECF Nos. 15 and 20).

        The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on December 15, 2014. See CAR 17.[1] In the application, plaintiff claims disability began on September 20, 2011. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on December 22, 2016, before Administrative Law Judge (ALJ) Curtis Renoe. In a May 19, 2017, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): lumbar spine degenerative disc disease at L5-S1, bilateral carpal tunnel syndrome, polycythemia vera status post coronary artery disease bypass surgery with stenting in 2013, cervical spine disc bulge with right neural foramen, obesity, anxiety disorders, and deep vein thrombosis;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: the claimant can perform light work; the claimant can lift and/or carry up to 10 pounds frequently and up to 20 pounds occasionally; sit for up to 2 hours without interruption; stand for up to 1 hour without interruption; walk for up to 30 minutes without interruption, sit for up to 6 hours in a normal workday total with normal breaks; stand for up to 4 hours in a normal workday total with normal breaks; walk for up to 4 hours total in a normal workday with normal breaks; frequently reach overhead with the bilateral upper extremities; handle and finger frequently with the right upper extremity; push/pull frequently with the bilateral upper extremities; frequently operate foot controls bilaterally with the right/left foot; never climb ladders/ropes or scaffolds, kneel, or crawl; occasionally balance and crouch; frequently climb ramps and stairs and stoop; never be exposed to unprotected heights or hazardous machinery; avoid concentrated exposure to fumes, dusts, odors, gases, or other pulmonary irritants; and work in noise conditions up to a loud level (e.g., heavy traffic); the claimant is further limited to performing simple routine repetitive tasks, making simple work-related decisions, having occasional interactions with supervisors and coworkers, and never interacting with the public other than for brief, superficial encounters not connected with the job duties;

///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on October 17, 2018 (ECF No. 12).

4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See CAR 19-31.

After the Appeals Council declined review on May 7, 2018, this appeal followed.

## III. DISCUSSION

In his opening brief, plaintiff argues: (1) the ALJ erred by failing to provide sufficient reasons for rejecting marked mental limitations opined by the consultative examining physician, Dr. Sunde; and (2) the ALJ erred by failing to elicit vocational expert testimony concerning deviations from the Dictionary of Occupational Titles.

### A.   **Evaluation of Medical Opinions**

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another. See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

6

professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

1. The ALJ's Analysis

At Step 4, the ALJ evaluated the medical opinion evidence to determine plaintiff's mental residual functional capacity. See CAR 26-29. The ALJ relied on the opinions of the agency consultative reviewing doctors, see CAR 27 (citing Exhibits 2A, 5A, and 6A), and consultative examining physician, Dr. Bachelor, see id. (citing Exhibit 3F). The ALJ gave little weight to the opinion of consultative examining physician, Dr. Sunde. See id. (citing Exhibit 10F).

As to Dr. Sunde, who conducted an examination of plaintiff in March 2015, the ALJ stated:

> Dr. Sunde opined that the claimant has moderate impairments in complex tasks, complying with safety, and responding to changes and marked impairment in persistence and pace (Ex. 10F). The undersigned accords little weight to this opinion. The consultative examiner based his opinion on the claimant's presentation on this one particular day, which is more like a "snap shot" of claimant's functioning as opposed to an overall assessment of his functioning throughout the entire relevant period. This one-time examination is not reflective of the claimant's impairments throughout the record. While the moderate impairments are consistent with the record, the marked impairment in persistence and pace is not supported. The claimant is able to care for himself and look after others, including his mother and young children. He is able to make easy meals, dust, and do laundry. He goes out daily and can go grocery shopping. He watches television daily (Ex. 4E). He also spends time reading (Ex. 23F, p. 8). The claimant's ability to participate in daily life and care for himself indicates that his persistence and pace is not marked[ly limited]. Moreover, the record does not indicate that the claimant seeks regular counseling for his anxiety. Additionally, the claimant reported in March 2016 that Xanax helps to keep his anxiety under control (Ex. 19F, p. 12). Furthermore, these findings are not consistent with the rest of the record, which does not indicate significant mental impairments in persistence and pace by any other examiner.

CAR 27-28.

7

2.  Plaintiff's Contentions

Plaintiff argues the ALJ failed to provide sufficient reasons for rejecting Dr. Sunde's opinion that plaintiff is markedly limited in persistence and pace. According to plaintiff:

> The ALJ rejected the marked limitations in persistence and pace assessed by Dr. Sunde and did not provide any reason to reject the moderate limitation assessed by Dr. Sunde in the ability to comply with job rules and attendance. AR 28. An ALJ may not reject the opinion of a treating or examining physician that is uncontradicted without providing "clear and convincing reasons that are supported by substantial evidence." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1996). Where the opinion of a treating or examining physician is contradicted, the ALJ must still provide "specific and legitimate reasons that are supported by substantial evidence" in order to reject it. *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir.2007).
> The ALJ rejected the marked limitation in persistence and pace assessed by the consultative examiner because they were based on a one-time examination. AR 27. This reason is not legitimate because the Commissioner regularly relies on the opinion of one-time examiners to grant or deny cases. In fact, the ALJ sent Gordon out for a consultative physical examination after the hearing and he had no problem accepting the limitations assessed by that examiner that resulted in a finding of not disabled. The ALJ's rejection of the psychiatric consultative examiner appears conclusion driven.
> The ALJ stated that the psychiatric consultative examiner's opinion was inconsistent with Gordon's daily activities of watching television, reading and caring for himself. AR 27. The ALJ does not provide a sufficient rational that the ability to perform these activities at a slow pace is inconsistent with Dr. Sunde's marked limitations in persistence and pace. Gordon performs his minor daily activities at his own slow pace. He stated that he visits his adult nephew and while he is visiting his nephew his grand niece and nephew are there as well. AR 50. Gordon testified that he just hangs out while his nephew is there and "just visits." AR 51. Gordon did not testify that he babysits or takes responsibility for his grandniece or nephew.
> The ALJ did not cite to anything specific or legitimate in the record that shows that Gordon's persistence and pace was inconsistent with Dr. Sunde's assessment. The ALJ also rejected Dr. Sunde's opinion stating that no other examiner in the record assessed significant limitation in persistence and pace. AR 28. However, this is not true as the previous consultative examiner, Dr. Bacheler assessed moderate limitations in persistence and pace. A mere conflict is insufficient to qualify as a legitimate reason for the rejection because it is only when a conflict exists that the specific and legitimate standard is triggered.
> Dr. Sunde's assessment documents that Gordon's condition worsened. This is consistent with the treating records from this time that show that Gordon presented for treatment stating that he has been following up with counseling at Pain Management where he discussed with his counselor that his anxiety and depression symptoms are getting worse. AR 1410. Gordon reported that his mental health medication was increased but that it had not helped to decrease his anxiety/depression symptoms. *Id*. Gordon reported that his current Xanax prescription was not working and that he discussed increasing his Xanax prescription. *Id*.

8

Dr. Sunde's assessment regarding persistence and pace is supported by his examination findings. While the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony," he cannot simply selectively choose evidence in the record that supports his conclusions; *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir.2004) (citing *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir.1984)) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); and *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975) (An ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence.").

The error is not harmless. This case is distinguishable from *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008). In Stubbs-Danielson the court found that a moderate limitation in concentration, persistence, and pace was adequately considered in a limitation to simple work. However, in that case the limitation was only a moderate limitation in concentration persistence and pace. In this case the limitation is marked.

Plaintiff also contends the ALJ erred by failing to provide any reasons for rejecting Dr. Sunde's opinion that plaintiff is moderately limited in ability to maintain attendance. Plaintiff asserts:

> The ALJ also failed to provide any reason to reject the moderate limitations in attendance assessed by Dr. Sunde . *See Bagby v. Comm'r of Soc. Sec.*, 606 Fed.Appx. 888, 890 (9th Cir. 2015) (unpublished); *Betts v. Colvin*, 531 Fed.Appx. 799, 800 & n.1 (9th Cir. 2013) (unpublished) (distinguishing *Stubbs-Danielson* and holding that ALJ erred by affording "greatest weight" to medical opinion but disregarding aspects of that opinion including limitations on attendance, among other areas); *Olmedo v. Colvin*, No. 1:14-cv-621-SMS, 2015 WL 3448093, at *8-9 (E.D. Cal. May 28, 2015) (holding that RFC limiting claimant to simple, repetitive tasks with no public contact did not account for limitations in maintaining attendance and completing a normal workday or workweek, among others); *Shea v. Astrue*, No. ED CV 12-86-E, 2012 WL 12878360, at *1-2 (C.D. Cal. Aug. 10, 2012) (holding that RFC limiting claimant to simple, repetitive tasks with no public contact did not adequately account for limitations in attendance).

3. <u>Decision</u>

The court finds no error with respect to Dr. Sunde's opinion that plaintiff has marked limitations in persistence and pace. While the ALJ's reference to a one-time examination and plaintiff's daily activities do not lend much support to his conclusion regarding this opinion, the ALJ nonetheless cited legally sufficient reasons supported by the record. Specifically, as the ALJ noted, Dr. Bachelor, who also conducted a one-time consultative examination of plaintiff, rendered a less restrictive opinion as to plaintiff's ability to maintain persistence and pace. Given that the opinions of non-examining professionals may constitute substantial evidence when the

9

opinions are consistent with independent clinical findings or other evidence in the record, see Thomas, 278 F.3d at 957, Dr. Bachelor's opinion of less-than-marked limitations in persistence in pace, rendered following an objective examination, constitute evidence sufficient to support the ALJ's rejection of marked limitations in persistence and pace. Moreover, because an ALJ may resolve a conflict between the opinions of treating and examining sources, see Andrews, 53 F.3d at 1041, the ALJ here was certainly entitled to resolve the conflict between the opinions of Drs. Sunde and Bachelor.

The court, however, finds the ALJ erred by not explaining why he rejected Dr. Sunde's opinion that plaintiff is moderately limited in his ability to maintain attendance. In making this finding, the court rejects defendant's suggestion Dr. Sunde did not even express an opinion as to attendance. As defendant observes, Dr. Sunde opined plaintiff is moderately limited in his ability to follow work rules, such as those related to safety and attendance. See CAR 650. Defendant argues the examples provided by Dr. Sunde are irrelevant and, in any event, the ALJ accounted for limitations regarding safety. The court does not agree Dr. Sunde's opinion can be cherry-picked in this fashion. To the extent the ALJ found importance in the safety example, enough so to include specific safety-related limitations in the residual functional capacity assessment, Dr. Sunde's example regarding attendance is equally important and the ALJ erred by not at least discussing it.

The matter will be remanded to allow the ALJ to further consider Dr. Sunde's opinion that plaintiff is moderately limited in his ability to maintain attendance.

**B.      Vocational Finding**

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

///

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[2] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See

---

[2] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e). Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

At Step 5, the ALJ determined the Grids are not applicable and obtained vocational expert testimony. See CAR 30-31. In response to interrogatories, the vocational expert testified plaintiff can perform work that exists in significant numbers in the national economy. See id. In particular, the vocational expert identified the following representative occupations: (1) collater; (2) garment folder; and (3) stock checker. See id. at 31. Pursuant to Social Security Ruling (SSR) 00-4p, the ALJ determined the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT). See id.

Plaintiff argues the ALJ erred because, contrary to the ALJ's explicit finding, the occupations identified by the vocational expert do in fact conflict with the information in the DOT, and the ALJ failed to resolve this conflict. Given the remand ordered above based on the ALJ's failure to consider Dr. Sunde's limitation in plaintiff's ability to maintain attendance, it is not necessary to rule on this issue because the current vocational findings will be rendered moot on remand. To the extent further consideration of moderate limitations in plaintiff's ability to maintain attendance affect the ALJ's residual functional capacity assessment, further vocational expert testimony will be required.

/ / /

/ / /

/ / /

12

## IV. CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is granted;
2. Defendant's motion for summary judgment (ECF No. 20) is denied;
3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: June 10, 2019

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE